UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBORAH BROWN, individually and on behalf
of all others similarly situated,

Plaintiff,

-against-

COTY, INC,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   3/29/2023

22 Civ. 2696 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Deborah Brown, brings this putative class action against Defendant, Coty, Inc.

("Coty"), alleging violations of the New York Consumer Law for Deceptive Acts and Practices,

N.Y. Gen. Bus. Law §§ 349 and 350, breach of an express warranty, breach of an implied

warranty, and unjust enrichment. Compl. ¶¶ 154–208, ECF No. 1. Coty moves to dismiss the

complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 35; *see*

*also* Def. Mem., ECF No. 36. For the reasons stated below, Coty's motion is GRANTED.[1]

**BACKGROUND[2]**

Per and Polyfluoroalkyl Substances ("PFAS") are synthetic chemicals used in consumer,

household, and commercial products. Compl. ¶¶ 7, 30–31. There are thousands of PFAS in

existence. *Id.* ¶ 32. All PFAS contain multiple carbon-fluorine bonds. *Id.* ¶¶ 32–33. PFAS can

have a variety of adverse effects on human health, even at low levels of exposure. *Id.* ¶¶ 42, 44,

46–48. Some PFAS, such as perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate

---

[1] Coty's request for oral argument is DENIED. *See* Def. Mem. The Court also declines to take judicial notice of the documents Coty and Brown submit in their briefing. *Id.* at 8 n.3; Pl. Opp. at 4 n.1, ECF No. 44. Consideration of these documents is unnecessary to dispose of the motion.

[2] The following facts are taken from the complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

("PFOS"), may be carcinogenic. *Id.* ¶¶ 35, 39, 44–45, 55.  PFAS differ in the types of adverse health consequences they may produce and the level of exposure at which they can be harmful to humans. *Id.* ¶¶ 42 n.15, 44, 52, 53 n.18.  PFAS can be ingested, inhaled, or absorbed through the skin. *Id.* ¶ 43.

PFAS are used in some cosmetics which are applied to the skin. *Id.* ¶ 61.  PFAS may be intentionally added to cosmetics as emulsifiers, stabilizers, surfactants, viscosity regulators, and solvents. *Id.* ¶¶ 62–66.  These may be disclosed on a product's ingredient list. *Id.* ¶¶ 63–66, 68. PFAS may also be found in cosmetics as a result of degradation, impurities, or the use of ingredients treated with PFAS. *Id.* ¶¶ 70, 80.  Since 2018, there has been increasing consumer demand for natural ingredients in cosmetics and "green" cosmetics, at least partially due to consumer fears about harmful chemicals in their cosmetics and personal care products. *Id.* ¶¶ 21–23, 50, 60.  Large cosmetics retailers have begun designating certain products as "clean," meaning that those products do not contain particular ingredients, including PFAS. *Id.* ¶¶ 25–26, 28.  Some cosmetics retailers are dedicated to carrying only products designated as "clean." *Id.* ¶ 27.  Consumers perceive products designated as "clean" to be safer and healthier than traditional cosmetics. *Id.* ¶ 29.

Brown purchased "one or more" tubes of CoverGirl Lash Blast Volume Waterproof Mascara ("Lash Blast") within the last three years. *Id.* ¶ 109.  Brown relied on the "packaging, labeling, and ingredient list[]" when purchasing the product. *Id.* ¶¶ 104, 114–15.  Brown determined through independent, third-party laboratory testing that "several popular CoverGirl waterproof mascara products, including [Lash Blast] and CoverGirl Clump Crusher Waterproof Mascara [('Clump Crusher')]" contained "certain . . . PFAS like PFOA." *Id.* ¶ 89.  Brown states that Lash Blast and Clump Crusher contain "detectable levels of PFAS, including PFOA,

PFHxA, PFDoS, and NEtFOSE." *Id.* ¶ 108.  Neither the Lash Blast nor the Clump Crusher packaging discloses that the product contains PFAS. *Id.* ¶¶ 91, 108.  Brown "reasonably believed [that Lash Blast was] safe for use around, adjacent to, and near her eyes." *Id.* ¶ 112.  If Brown had known at the time of purchase that Lash Blast contained PFAS, she would not have purchased the product or would have paid less for the product. *Id.* ¶¶ 105, 117–18, 125.

Coty is a cosmetics company that sells, *inter alia*, waterproof mascara products under the "CoverGirl" brand name. *Id.* ¶¶ 7, 92.  Coty formulated, developed, manufactured, labeled, distributed, marketed, advertised, and sold Lash Blast and Clump Crusher throughout the United States. *Id.* ¶ 103.

On April 1, 2022, Brown brought this action on behalf of herself and all others in the United States who purchased Lash Blast or Clump Crusher between 2018 and the present. *Id.* ¶¶ 89, 109, 144.[3]  Brown has not yet moved for class certification.  Coty moves to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rules 12(b)(6) and 9(b).  ECF No. 35; *see also* Def. Mem. at 8.

## DISCUSSION

I.    <u>Motion to Dismiss</u>

    A.  Legal Standards

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions," and must provide more than a

---

[3] On July 5, 2022, Brown voluntarily dismissed all claims against Defendant Cover Girl Cosmetics.  ECF No. 32; *see also* ECF No. 33.

"formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.
Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the
speculative level." *Id.*  The Court must accept the allegations in the pleadings as true and draw
all reasonable inferences in favor of the non-movant. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87, 98 (2d Cir. 2007).

To state a claim for a violation of New York General Business Law §§ 349 or 350, a
plaintiff must allege that a defendant engaged in consumer-oriented conduct that was materially
misleading and that the plaintiff suffered an injury as a result. *See Orlander v. Staples, Inc.*, 802
F.3d 289, 300 (2d Cir. 2015); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y.
2021).  A plaintiff must also show that the allegedly misleading practice is likely to mislead a
reasonable consumer. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Barreto*,
518 F. Supp. 3d at 802.  A court may decide as a matter of law that an advertisement would not
mislead a reasonable consumer.  *Fink*, 714 F.3d at 741; *Lugones v. Pete & Gerry's Organic,
LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020).

A claim for breach of an express warranty requires a plaintiff to allege that the defendant
made an affirmation of fact or promise which was false or misleading when made and which had
a natural tendency to induce a buyer to purchase the offending product, and that the plaintiff
relied on the express warranty to her detriment.  *See DiBartolo v. Abbott Lab'ys*, 914 F. Supp. 2d
601, 625 (S.D.N.Y. 2012) (collecting cases); *see also Koenig v. Boulder Brands, Inc.*, 995 F.
Supp. 2d 274, 289 (S.D.N.Y. 2014).  If a claim for breach of an express warranty is premised on
the assertion that a defendant's labeling is materially misleading, a plaintiff must also allege that
the labeling "would be likely to deceive or mislead a reasonable consumer." *Twohig v. Shop-
Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 165 (S.D.N.Y. 2021).  A plaintiff must point to a

specific, express statement that is false or misleading and that a reasonable consumer can interpret as a material claim about the product. *Twohig*, 519 F. Supp. 3d at 167 (citations omitted); *see also Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (collecting cases).

To state a claim for breach of the implied warranty of merchantability and fitness, a plaintiff must allege that the defective product is not fit for its ordinary purpose, that the seller had reason to know at the time of contracting of the particular purpose for which such products are used, and that the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish suitable goods. *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016). Where the only alleged injury is economic, a plaintiff must show privity between the plaintiff and the defendant, unless the plaintiff can show that she is a third-party beneficiary of a contract between the defendant and another party. *Id.* at 556–57; *see also Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986). To establish that she is a third-party beneficiary, the plaintiff must demonstrate the existence of a contract between the defendant and another party that was intended for the plaintiff's benefit, which benefit is sufficiently immediate and not incidental, indicating an assumption by the contracting parties of a duty to compensate the plaintiff if the benefit is lost. *Catalano*, 167 F. Supp. 3d at 557; *see also Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 469 (S.D.N.Y. 2014). It is insufficient to allege that the defendant knew that consumers were the ultimate purchasers of the allegedly defective product. *Catalano*, 167 F. Supp. 3d at 557; *Marshall*, 51 F. Supp. 3d at 469.

A claim for unjust enrichment requires a plaintiff to allege that the defendant was enriched at the plaintiff's expense and, under the circumstances, equity and good conscience require the defendant to make restitution. *Goldemberg*, 8 F. Supp. 3d at 483. This cause of

action is only available when, even though the defendant has not breached a contract or committed a recognized tort, the circumstances create an equitable obligation running from the defendant to the plaintiff. *Id.* It is not available if it simply duplicates a contract or tort claim. *Twohig*, 519 F. Supp. 3d at 168 (collecting cases). If a claim for unjust enrichment is premised on the assertion that a defendant's labeling is materially misleading, a plaintiff must also allege that the labeling "would be likely to deceive or mislead a reasonable consumer." *Id.* at 165.

Under Rule 12(b)(1), a district court must dismiss a complaint if the plaintiff has not established standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A plaintiff has standing if she has pleaded a case or controversy in the outcome of which she has a personal stake. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015). A plaintiff must demonstrate that she has sustained an injury in fact that is concrete, particularized, and actual or imminent; that the injury was caused by the defendant's action or omission; and that a favorable resolution is likely to redress the injury. *Id.*; *see also Lujan*, 504 U.S at 560–61. The jurisdictional question must be resolved before the merits. *Cortlandt St. Recovery Corp.*, 790 F.3d at 417.

> B. Analysis

First, Coty argues that Brown has failed to establish standing because she has failed to allege a concrete and particularized injury. Def. Mem. at 8–14. Coty contends that, because Brown alleges only economic injury, Brown has not alleged an injury in fact that would confer standing. *Id.* at 12. The Court disagrees. Brown alleges that, but for Coty's alleged material omission—the failure to disclose that Lash Blast contains PFAS—she would not have purchased the product or would not have paid the price she did. *Id.* ¶¶ 105, 117–18, 125. Such economic

injury, including the payment of a "price premium" that the plaintiff otherwise would not have paid, is sufficient to confer standing. *See Orlander*, 802 F.3d at 301–02.

Coty also argues that Brown has not established that she has standing to bring claims on behalf of putative class members with respect to Clump Crusher. *See* Def. Reply at 13, ECF No. 48. The Court agrees. A plaintiff may have standing to bring class claims with respect to a product she did not purchase if that product is sufficiently similar to the product the plaintiff purchased such that both products raise "nearly identical" concerns. *DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 29 (2d Cir. 2014). Brown does not allege that Lash Blast and Clump Crusher are sufficiently similar. She claims that the two products are "CoverGirl waterproof mascara products" that contain undisclosed PFAS. Compl. ¶¶ 89, 91. She does not allege that they contain the same PFAS at the same levels. She acknowledges that PFAS differ in the type and severity of harm they may produce and the level of exposure at which they are harmful. *See id.* ¶¶ 42 n.15, 44, 52, 53 n.18. Brown, therefore, has not alleged that the two products are sufficiently similar in that they raise nearly identical issues as to whether they are unsafe or unfit for ordinary use and whether Coty's omission was misleading. Accordingly, Coty's motion is GRANTED as to Brown's class claims regarding Clump Crusher.

Second, Coty argues that Brown has not plausibly alleged that reasonable consumers are likely to be misled by Coty's omission, Def. Mem. at 14–17, which is fatal to her claims under New York General Business Law §§ 349 or 350, as well as her breach of express warranty and unjust enrichment claims, Def. Reply at 5, 14; *see also Fink*, 714 F.3d at 741; *Twohig*, 519 F. Supp. 3d at 165. The Court agrees.

Brown alleges that Coty's statements on its website and in a press release are misleading, Compl. ¶¶ 93–100, but she does not allege that she or any putative class members relied on these

statements when purchasing Lash Blast, *id.* ¶¶ 11, 104, 114–15, 121, 128, 130.  Thus, Coty's statements on its website and in its press release cannot support Brown's claims under New York General Business Law § 350 or her breach of express warranty claim.  *See, e.g.*, *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 186 n.6 (E.D.N.Y. 2018) (noting that § 350 claims require a plaintiff to demonstrate reliance, but § 349 claims do not); *Goldemberg*, 8 F. Supp. 3d at 482 (holding that a plaintiff must point to a particular statement on which she relied in order to plead a breach of express warranty).

Moreover, the statements at issue are nonactionable puffery.  *See Lugones*, 440 F. Supp. 3d at 241 (finding that claims for violations of New York General Business Law §§ 349 and 350 are not cognizable when based on statements that constitute mere puffery).  Puffery includes statements that are broad, vague, and commendatory, or that express opinion rather than fact. *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007); *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 209 (E.D.N.Y. 2010).  A court considers vagueness, subjectivity, and ability to influence buyers' expectations in determining whether a statement constitutes puffery.  *See Colangelo v. Champion Petfoods USA, Inc.*, No. 18 Civ. 1228, 2020 WL 777462, at *8 (N.D.N.Y. Feb. 18, 2020); *Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013).  Coty's statements on its website and in its press release do not describe any particular product, let alone Lash Blast.  *See Avola*, 991 F. Supp. 2d at 392; *Elkind v. Revlon Consumer Prods. Corp.*, No. 14 Civ. 2484, 2015 WL 2344134, at *13, (E.D.N.Y. May 14, 2015).  Rather, the statements are aspirational company mission statements.  *See, e.g.*, Compl. ¶ 93 ("[W]e intend to . . ."); *id.* ¶ 94 ("Our ambition is to . . ."), *id.* ¶ 100 ("[Coty] continuously seeks to improve . . ." (alteration omitted)).  These statements cannot be objectively measured and cannot be proven true or false.  *See, e.g.*, *id.* ¶ 97 (claiming

that Coty is a "responsible beauty brand"); *Avola* 991 F. Supp. 2d at 393; *Time Warner Cable, Inc.*, 497 F.3d at 159; *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995). Therefore, these statements cannot support Brown's claims.

Brown also alleges that the failure to disclose on the packaging that Lash Blast contains PFAS is material and misleading. *See, e.g.*, Compl. ¶¶ 89, 91, 107. Because Brown does not identify any particular statements on which she relied, she cannot state a claim for breach of an express warranty. *See Twohig*, 519 F. Supp. 3d at 167; *Goldemberg*, 8 F. Supp. 3d at 482. Therefore, Coty's motion is GRANTED as to Brown's breach of express warranty claim.

Further, even reading the complaint in the light most favorable to Brown, she has not sufficiently pleaded that she and the putative class members have been misled by Coty's omission. The complaint can be read to allege that Brown believed Lash Blast was safe for use, Compl. ¶ 112, because the product packaging did not disclose the presence of PFAS, *id.* ¶¶ 91, 105, but Lash Blast did, in fact, contain PFAS, *id.* ¶ 89, which rendered it unsafe, *id.* ¶¶ 107, 118. Brown does not specify which PFAS were present in Lash Blast or at what levels. *See id.* ¶ 89. The complaint acknowledges that PFAS differ in the type and severity of harm they may produce and the level of exposure at which they are harmful. *See id.* ¶¶ 42 n.15, 44, 52, 53 n.18. As a result, Brown has not sufficiently pleaded that Lash Blast is actually unsafe such that it is not of the "quality and safety promised" at the time of purchase. *Id.* ¶ 118. For the same reason, she has not adequately pleaded that Lash Blast is not fit for its ordinary use.

The complaint can also be read to allege that Coty adds PFAS as ingredients in Lash Blast. *See id.* ¶¶ 11, 114–15, 121, 134, 140. Brown claims that PFAS are commonly used in cosmetics. *Id.* ¶¶ 61–62, 64, 66. She does not allege that the Lash Blast packaging represented the product to be PFAS-free; rather, she claims that other products marked as "clean" by retailers

specifically state that they do not contain PFAS, and that these products tend to be more expensive than products not marked as "clean." *Id.* ¶¶ 25–29.  She does not identify any basis on which she or another reasonable consumer might assume that Lash Blast does not contain PFAS. It may be inferred from the complaint that Brown is claiming that PFAS should have been listed in the ingredient list on the Lash Blast packaging, but Brown states that "a reasonable consumer would be unlikely to identify most of the compounds as part of the PFAS family simply by looking at the name of the ingredient." *Id.* ¶ 66.  Brown does not allege that Lash Blast contains a PFAS that is recognizable to consumers which was added as an ingredient to the product, and which was not disclosed on the ingredient list.  Therefore, Brown has not sufficiently alleged that Coty omitted PFAS from the Lash Blast ingredient list and that such omission is misleading to a reasonable consumer.

The complaint may also be read as claiming that Lash Blast contains PFAS as a result of product degradation, impurities, or the treatment of certain ingredients with PFAS.  *Id.* ¶¶ 70, 80, 107, 134, 140.  But, Brown does not plead such a claim with a level of specificity sufficient to permit Coty to have a "fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)).  For instance, it cannot be determined from the complaint whether Brown is alleging that Coty should have known its ingredients were treated with PFAS, or whether Coty should have known that, under certain conditions, the product would degrade and ultimately contain PFAS, even if it did not contain PFAS at the time of manufacturing.  And, if Brown is indeed alleging that Lash Blast may contain PFAS as a result of degradation or impurities, Brown has not alleged that the products she herself purchased contained PFAS such that she can allege an injury in fact.  *See*

*Cortlandt St. Recovery Corp.*, 790 F.3d at 417.  Thus, on any fair reading of the complaint, Brown has failed to state a claim under New York General Business Law §§ 349 and 350 and has failed to state a claim for unjust enrichment.[4]  Accordingly, Coty's motion is GRANTED as to these claims.

Finally, Coty argues that Brown's implied warranty claims must be dismissed because she does not allege that she is in privity with Coty.  Def. Mem. at 23.  The Court agrees.  Brown does not allege that she purchased Lash Blast directly from Coty.  *See* Compl. ¶ 109.  She also fails to adequately plead that she was an intended third-party beneficiary of a contract between Coty and the retailer from which she purchased Lash Blast.  She has not identified any retailer, let alone a contract between Coty and that retailer; she, therefore, cannot plausibly allege that such a contract was intended by the parties to benefit her and the putative class members. *Catalano*, 167 F. Supp. 3d at 557; *Marshall* at 51 F. Supp. 3d at 469.  Brown's conclusory allegation that she and the putative class members are intended beneficiaries, Compl. ¶ 132, is insufficient to state a claim for breach of an implied warranty, *Catalano*, 167 F. Supp. 3d at 557; *Marshall*, 51 F. Supp. 3d at 469.  Coty's motion is GRANTED as to Brown's claim for breach of an implied warranty.

And, because Brown, individually, does not state a claim as to Lash Blast, no such claims can be maintained on behalf of the putative class.  *See Lugones*, 440 F. Supp. 3d at 236–39; *Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat. Ass'n*, 986 F. Supp. 2d 412, 420 (S.D.N.Y. 2013); *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 213 (E.D.N.Y. 2016).  For these reasons, Coty's motion is GRANTED in its entirety.

---

[4] The Court does not reach Coty's Rule 9(b) arguments because the Court's analysis under Rule 12(b)(6) is sufficient to resolve the motion.  *See* Def. Mem. at 18–20.

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  Granting leave "is within the sound discretion of the district court."  *Kim v.*

*Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (quotation marks omitted).  Accordingly, Brown's

request for leave to amend her complaint, Pl. Opp. at 30, is GRANTED.

## CONCLUSION

For the foregoing reasons, Coty's motion to dismiss is GRANTED.  Brown's request for

leave to amend her complaint is GRANTED.  By **April 12, 2023**, Brown shall file her amended

complaint.  Because Brown's complaint is dismissed in its entirety, Brown's pending motion to

appoint interim class counsel, ECF No. 52, is DENIED without prejudice to renewal, and the

case management conference scheduled for June 20, 2023, is ADJOURNED *sine die*.

The Clerk of Court is directed to terminate the motions at ECF Nos. 35 and 52.

SO ORDERED.

Dated: March 29, 2023
New York, New York

ANALISA TORRES
United States District Judge

12