```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  03/01/2024  
```

DEBORAH BROWN, MARIE GIORDANO, JESSICA CARDE-HARTMAN, DARLENE BOBCZYK, GWENDOLYN SIMMONS, MARI MILLER, APRIL ZACARIAS, BUFFY MARIE INGLE, and CHRISTINA CHADWELL, and DEENA SCANDORE, individually and on behalf of all others similarly situated,

              Plaintiffs,

-against-

COTY, INC,

              Defendant.

22 Civ. 2696 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiffs, Deborah Brown, Marie Giordano, Jessica Carde-Hartman, Darlene Bobczyk, Gwendolyn Simmons, Mari Miller, April Zacarias, Buffy Marie Ingle, Christina Chadwell, and Deena Scandore, bring this putative class action to challenge the alleged presence of synthetic chemicals in cosmetics manufactured by Defendant Coty, Inc. ("Coty"). Plaintiffs assert claims under the consumer protection laws of New York, Illinois, California, Michigan, Nevada, North Carolina, and Virginia, as well as a claim for unjust enrichment under New York law. Am. Compl. ¶¶ 305–451, ECF No. 64. Coty moves to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). ECF No. 79; *see also* Def. Mem., ECF No. 80. For the reasons stated below, Coty's Rule 12(b)(1) motion is GRANTED.

**BACKGROUND**

I.  Factual Background[1]

Per- and polyfluoroalkyl substances ("PFAS") are synthetic chemicals used in consumer, household, and commercial products.  Am. Compl. ¶ 46.  PFAS can have a variety of adverse effects on human health, even at low levels of exposure.  *Id.* ¶¶ 57, 59, 61–68.  PFAS can be ingested, inhaled, or absorbed through the skin.  *Id.* ¶ 59.  A 2021 study published by Notre Dame scientists (the "Notre Dame Study") found that "some mascaras purporting to be waterproof contain undisclosed PFAS."  *Id.* ¶ 1; *see id.* ¶¶ 89–96.

Coty "manufactures certain popular waterproof mascara products," including Lash Blast Volume ("Lash Blast") and Clump Crusher under the CoverGirl brand name.  *Id.* ¶ 2.  Plaintiffs do not allege that the Notre Dame Study, which did not name the mascaras it tested in its two research phases, found Lash Blast or Clump Crusher to contain PFAS.  *Id.* ¶¶ 91, 93–95.  Following the publication of the Notre Dame Study, however, Plaintiffs "arranged for independent third-party testing to determine whether certain CoverGirl-branded cosmetic products contained PFAS" (the "Commissioned Test" or the "Test").  *Id.* ¶ 103.  The Commissioned Test found that Lash Blast contained five types of PFAS and that Clump Crusher contained four types.[2]  *Id.* ¶¶ 106–07.

---

[1] The following facts are taken from the amended complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim," *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015), and for considering a motion to dismiss for lack of standing, *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (cleaned up).

[2] The Lash Blast PFAS included perfluorooctanoic acid (PFOA) at a concentration of 250 parts per trillion, perfluorohexanoic acid (PFHxA) at a concentration of 4,600 parts per trillion, hexafluoropropylene oxide dimmer acid (HFPO-DA, also known as Gen-X) at a concentration of 2,500 parts per trillion, N-methyl perfluorooctane sulfonamido ethanol (NMeFOSE) at an unspecified concentration, and N-ethyl perfluorooctane sulfonamido ethanol (NEtFOSE) at an unspecified concentration.  Am. Compl. ¶¶ 106–08, 111.  The Clump Crusher PFAS included perfluorohexanoic acid (PFHxA) at an unspecified concentration, perfluorododecanesulfonic acid (PFDoS) at an unspecified concentration, perfluoropentanoic acid (PFPeA) at a concentration of 1,000 parts per trillion, and adsorbable organic fluorine (AOF) at an unspecified concentration.  *Id.* ¶¶ 107, 112.

PFAS may be intentionally added to cosmetics as emulsifiers, stabilizers, surfactants, viscosity regulators, and solvents. *Id.* ¶¶ 74–78. PFAS may also be found in cosmetics because of degradation, impurities, or the use of ingredients treated with PFAS. *Id.* ¶¶ 81–84. The ingredient lists for Lash Blast and Clump Crusher do not state that the products contain PFAS, and their packaging does not state that the products could degrade to ultimately contain PFAS. *Id.* ¶¶ 135, 136, 138.

Coty "uses standardized manufacturing and production protocols designed to minimize variations in the production process," including "strict quality control measures, standardized ingredient sourcing, and rigorous testing procedures." *Id.* ¶ 143. Plaintiffs claim that as a result, Coty "knew or should have known [that Lash Blast and Clump Crusher] contain toxic PFAS at the point of sale." *Id.* ¶ 151.

Plaintiffs Brown, Giordano, Carde-Hartman, Bobczyk, Simmons, Miller, Zacarias, Chadwell, and Scandore purchased "one or more" tubes of Lash Blast since April 1, 2019. *Id.* ¶¶ 155, 166, 177, 189, 201, 214, 225, 248, 259. Plaintiffs Ingle and Scandore purchased "one or more" tubes of Clump Crusher since April 1, 2018. *Id.* ¶¶ 236, 259. Each Plaintiff relied on Coty's advertisements, packaging, labeling, ingredient lists, and disclosures when purchasing the product. *Id.* ¶¶ 159–60, 170–71, 182–83, 194–95, 207–08, 218–19, 229–30, 241–42, 252–53, 263–64. If each Plaintiff had known at the time of purchase that Lash Blast or Clump Crusher contained PFAS, she would not have purchased the product or would have paid less for the product. *Id.* ¶¶ 163, 174, 186, 198, 211, 222, 233, 245, 256, 267.

II.  Procedural History

On April 1, 2022, Plaintiff Brown brought this action on behalf of herself and all others in the United States who purchased Lash Blast or Clump Crusher between 2018 and the present,

asserting claims under the New York consumer protection law, as well as breach of an express warranty, breach of an implied warranty, and unjust enrichment. Compl. ¶¶ 89, 109, 144, ECF No. 1. By order dated March 29, 2023 (the "Order"), the Court dismissed the complaint and granted Brown leave to amend. Order at 12, ECF No. 61.

On May 12, 2023, Plaintiffs filed the amended complaint, adding nine plaintiffs and asserting claims under the consumer protection laws of six additional states. Am. Compl. ¶¶ 17–26. Coty again moves to dismiss the amended complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rules 12(b)(6) and 9(b). ECF No. 79; *see also* Def. Mem. at 1–4.

## DISCUSSION

### I. Legal Standard

Under Rule 12(b)(1), a district court must dismiss a complaint if the plaintiff has not established standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, Plaintiffs have the burden of alleging facts that affirmatively and plausibly suggest that they have standing to sue." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 154 (E.D.N.Y. 2018) (cleaned up) (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)). A plaintiff has standing if she has pleaded a case or controversy in the outcome of which she has a personal stake. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015). For a plaintiff to have standing to bring a lawsuit under Article III of the United States Constitution, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citation omitted). The jurisdictional question must be resolved before the merits. *Cortlandt St. Recovery Corp.*, 790 F.3d at 417. "Because standing is challenged here on the

basis of the pleadings, [the Court] therefore accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (cleaned up).

II.     Analysis

The injury-in-fact requirement is a "low threshold" and can be satisfied at the pleading stage with "general factual allegations of injury." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (citations omitted). As with their original complaint, Plaintiffs claim that they "paid Defendant a price premium" for the products because they believed that the products did not contain PFAS. Am. Compl. ¶ 272; Order at 6–7. "Such an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (collecting cases).

However, because Plaintiffs claim that "they were injured because they overpaid for misbranded and/or inadequately labeled [p]roducts," they must plausibly allege that "one of them purchased a [p]roduct that was misbranded, *i.e.*, that contained PFAS." *Onaka v. Shiseido Ams. Corp.*, No. 21 Civ. 10665, 2023 WL 2663877, at *4 (S.D.N.Y. Mar. 28, 2023). Plaintiffs claim to have bought "one or more tubes" of Lash Blast or Clump Crusher in the past five to six years. Am. Compl. ¶¶ 155, 166, 177, 189, 201, 214, 225, 236, 248, 259. They do not claim to have "purchased the [p]roducts with any regular frequency." *Onaka*, 2023 WL 2663877, at *5. Plaintiffs concede that they did not test the individual products that each purchased. Pl. Opp. at 10, ECF No. 82.

"[T]he fact that [P]laintiffs did not actually test the products that they purchased does not mean that they lack standing." *Clinger v. Edgewell Personal Care Brands, LLC*, No. 21 Civ.

1040, 2023 WL 2477499, at *3 (D. Conn. Mar. 13, 2023).  But, Plaintiffs must allege that "the presence of PFAS in the [p]roducts is so widespread as to render it plausible that any Plaintiff purchased a mislabeled [p]roduct at least once."  *Onaka*, 2023 WL 2663877, at *4.

"[A] product defect may be plausibly inferred from the fact that a third-party investigation has revealed defects in the same line of such products."  *Clinger*, 2023 WL 2477499, at *3 (citing *John*, 858 F.3d at 736–38).  Independent testing of a product line must be "reasonably near in time" to Plaintiffs' own purchases.  *Onaka*, 2023 WL 2663877, at *4 (citation omitted).  For example, in *John*, a city investigation found that, from fall 2014 to winter 2015, Whole Foods "systematically" and "routinely inflated the weight listed on the labels of pre-packaged products" in eight New York City stores, such that "89 percent of all packages" tested by the city agency "failed to satisfy federal labeling standards."  858 F.3d at 734–37.  The plaintiff alleged that he had made monthly purchases of cheese and cupcakes—which were "among the pre-packaged products" identified by the investigation as mislabeled—at two New York City stores during the time period analyzed by the city.  *Id.* at 735.  The Second Circuit held that these allegations were sufficient to show standing: the investigation's findings of systematic mislabeling and the plaintiff's monthly purchases made it "plausible that [the plaintiff] overpaid for at least one product."  *Id.* at 737.

Plaintiffs argue that they have alleged "systemic" contamination of Lash Blast and Clump Crusher, making it similarly plausible that they each overpaid for at least one product.  Pl. Opp. at 11.  To support their claim, Plaintiffs cite to the Notre Dame Study, the Commissioned Test, and Defendant's standardized manufacturing processes.  *Id.* at 10–11.  Although Plaintiffs "need not prove the accuracy of the [studies'] findings or the rigor of [their] methodology" at the pleading stage, *id.*, Plaintiffs' allegations are deficient because they are "murky as to [the

studies'] actual findings." *Hicks v. L'Oréal U.S.A., Inc*, No. 22 Civ. 1989, 2023 WL 6386847, at *7 (S.D.N.Y. Sept. 30, 2023) (dismissing a complaint that also relied on the Notre Dame Study and a plaintiff-commissioned study); *see Esquibel v. Colgate-Palmolive Co.*, 2023 WL 7412169, at *3 (S.D.N.Y. Nov. 9, 2023) ("Plaintiffs have pled insufficient information about the third-party testing to support their assertion that the products the named Plaintiffs purchased plausibly contained PFAS.").

According to the amended complaint, the Notre Dame Study analyzed 231 cosmetic products for total fluorine, which Plaintiffs claim is a "scientifically valid, widely used method to investigate whether PFAS are present." Am. Compl. ¶¶ 89–90. But, although mascaras were one of the product categories with the highest proportion of fluorine concentrations, Plaintiffs do not indicate "how many total mascara products were tested[,] what percentage of those mascaras contained fluorine," whether "the presence of fluorine necessarily means the presence of PFAS," and whether either Lash Blast or Clump Crusher were among the products tested. *Hicks*, 2023 WL 6386847, at *7.[3]

Plaintiffs attempt to support their allegations with the Commissioned Test, which did analyze Lash Blast and Clump Crusher and identified specific types of PFAS in each product. Plaintiffs claim that they need not say more because "[i]t is reasonable to assume that [PFAS] did not magically appear . . . [and] must have appeared by reason of some aspect of the manufacturing process." Pl. Opp. at 11 (quoting *Clinger*, 2023 WL 2477499, at *4). But, Plaintiffs are vague about the Test's findings. In contrast to the governmental investigation in *John*, the Test is not alleged to have found that the presence of PFAS is "systemic" in Lash Blast

---

[3] Plaintiffs also do not allege the time period analyzed by the Notre Dame Study, and the Court cannot conclude on the face of the complaint that the testing is "reasonably near in time" to Plaintiffs' own purchases. *Onaka*, 2023 WL 2663877, at *4.

7

or Clump Crusher.[4] Plaintiffs do not allege how many lots or tubes of Lash Blast and Clump Crusher were tested, nor do they "allege how pervasive PFAS was found to be" or "whether all products within the same product line tested positive for the presence of PFAS." *Hicks*, 2023 WL 6386847, at *8. These details are necessary not to scrutinize the Test's scientific validity, but to understand what the Test found. Without more, the Court cannot know if all tested tubes of Lash Blast and Clump Crusher tested positive for similar levels of the identified PFAS—or if a single tube tested positive, while every other tested tube showed no signs of PFAS. In the latter case, the Court cannot plausibly infer that the few tubes purchased by Plaintiffs over a span of years contain PFAS.

Plaintiffs contend that "[i]f PFAS is present in the [p]roducts because of degradation or impurity of raw materials, or because Coty's manufacturing process relies on a contaminated water source, the impact is reasonably likely to be systemic given Coty's standardized processes intended to ensure consistency of the final product." Pl. Opp. at 11. But, Plaintiffs do not allege that degradation and impurities occur at a predictable and systemic rate, nor do they provide factual content to support such an inference. And, the "mere risk that the [p]roduct was contaminated with an injurious substance . . . does not establish an economic injury." *Esquibel*, 2023 WL 7412169, at *3.

Plaintiffs have failed to allege that they each suffered an injury in fact. Accordingly, Defendant's motion to dismiss for lack of standing is GRANTED.[5]

---

[4] Unlike the studies in *John* and *Clinger*, the Commissioned Test is not a wholly independent third-party investigation with public methodology; Plaintiffs commissioned the Test but have disclosed few details about who conducted it and how it was conducted. *See* Am. Compl. ¶¶ 103–105 ("Plaintiffs sought out an independent laboratory that used industry standard techniques").

[5] Because the Court finds that Plaintiffs fail to adequately allege Article III standing, it shall not reach the remainder of Defendants' arguments. *See Onaka*, 2023 WL 2663877, at *6.

### III. Dismissal Without Prejudice

Defendant requests that the complaint be dismissed with prejudice. Def. Mem. at 4. "[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice," because the Court lacks the power to "adjudicate the merits of the case" or "dismiss a case with prejudice." *Carter,* 822 F.3d at 54–55.

"Leave to amend, though liberally granted, may be properly denied for repeated failure to cure deficiencies by amendments previously allowed or futility of amendment, among other reasons." *Esquibel*, 2023 WL 7412169, at *4 (quotation marks and citation omitted). Plaintiffs have "had the benefit of a court ruling with respect to the deficiencies of [their] pleading." *Id.* (citation omitted). The Order instructed Plaintiff Brown that if she "is indeed alleging that Lash Blast may contain PFAS as a result of degradation or impurities, [she] has not alleged that the products she herself purchased contained PFAS such that she can allege an injury in fact." Order at 10. The Court shall not at this time grant leave to amend. If—and only if—Plaintiffs "believe that they can plead facts that would adequately state a claim upon which relief may be granted and which can cure the standing-related defects identified above," Plaintiffs may move for leave to amend. *Hicks*, 2023 WL 6386847, at *10.

## CONCLUSION

For the foregoing reasons, Coty's motion to dismiss pursuant to Rule 12(b)(1) is GRANTED. The deadlines in the second amended case management plan, ECF No. 89, are VACATED. By **April 15, 2024**, Plaintiffs may move for leave to file an amended complaint.

The Clerk of Court is directed to terminate the motion at ECF No. 79.

SO ORDERED.

Dated: March 1, 2024
      New York, New York

_____
ANALISA TORRES
United States District Judge